No. 80,111

In the Matter of ROBERT L. MORSE, *Respondent*.
(954 P.2d 1092)

Opinion filed March 6, 1998.

*Frank D. Diehl*, deputy disciplinary administrator, argued the cause, and *Stanton A. Hazlett*, disciplinary administrator, was with him on the formal complaint for petitioner.

*Robert W. Manske*, of Olathe, argued the cause for respondent, and *Robert L. Morse*, respondent, appeared pro se.

*Per Curiam*: This is an original proceeding in discipline filed by the office of the Disciplinary Administrator against Robert L. Morse, of Olathe, Kansas, an attorney licensed to practice law in the state of Kansas. Complaints against the respondent alleged that he violated MRPC 1.3 (1997 Kan. Ct. R. Annot. 276) (diligence) and MRPC 1.4 (1997 Kan. Ct. R. Annot. 282) (communication).

The facts are not in dispute. Respondent is an attorney at law with a last registration address of Olathe, Kansas, filed with the Clerk of the Appellate Courts. On October 7, 1994, respondent took $300 from a new client, Thomas Mader, and agreed to prepare and file a Chapter 7 bankruptcy petition for Mader. In September 1994, judgment had been entered for approximately $9,000 against Mader. If timely filed, the bankruptcy petition would have protected Mader from this judgment, but respondent did not file that petition until early March 1995. In the meantime, Mader received an order of garnishment and notice of hearing on the judgment.

Respondent falsely advised Mader and others, including counsel for Mader's creditors, that the bankruptcy petition was filed in December 1994 and that the petition would be heard on January 10, 1995. Beginning in February 1995, Mader's paycheck was garnished weekly until April 2, 1995. Respondent repeatedly lied to Mader about the petition being filed and the garnishment being lifted. The client filed a complaint with the Disciplinary Administrator's office.

Months after the September 1996 hearing before the panel, respondent was evaluated at the Research Psychiatric Center and was treated by Dr. Larry D. Ray for depression and alcohol dependence. In addition to treatment, respondent made $800 restitution to Mader. The garnishment of Mader's wages was released by order of the Franklin County District Court.

In a June 30, 1997, letter to the other panel members, Chairman Wynn reminded Frank Diehl, deputy disciplinary administrator, and Robert Manske, counsel for respondent, that the panel required updated comments from John Cochran, of Olathe, respondent's supervising attorney, as well as from respondent's treating physician, CareNET (a health care provider), and members of the bar regarding respondent's ability to practice law. Manske agreed to meet a July 15, 1997, deadline for such comments. Cochran agreed to provide monthly updates on respondent's practice. Despite the agreement with the chairman, the panel had not received updated comments at the time of the final hearing report.

On November 21, 1997, respondent's attorney filed a response to the final hearing report and to a motion to supplement the record, which this court granted. In the motion, respondent's counsel stated that at the conclusion of the hearing on September 16, 1996, the Disciplinary Administrator's office and respondent were in agreement that "[r]espondent would ultimately be suspended, and then reinstated to practice with a supervising attorney." Counsel stated that he did not have the understanding that "this supervision would commence immediately and without any prior approval of the supervising attorney or the method of supervision by the panel or the Court." Respondent's counsel stated that he had "advised [r]espondent to wait for the order directing supervision." Counsel stated further that it was not until June 1997 that he "was made aware" that supervision should have commenced in September 1996. Counsel did not recall that the parties were told on the record that the record would remain open for 9 months to receive reports from the supervising attorney. Counsel stated respondent was now being supervised by an attorney and moved for leave to supplement the record with reports from the supervising attorney and relevant medical records. The motion was granted.

On December 30, 1997, respondent submitted various reports from Cochran to this court. They reflect weekly meetings with Cochran occurring between November 8, 1997, and December 13, 1997. Cochran's report states:

1. Respondent has become involved with Promise Keepers, has a close relationship with his pastor, and has sought marriage counseling.

2. Respondent has sought to improve management of his law office and is now using a computerized time slip management system. He has closed his Olathe office and has moved his office to his home. He meets clients at the courthouse, the client's home, or a cafe.

3. Respondent was being treated for chronic depression and had undergone a 4-week outpatient treatment program at Research Hospital.

4. Respondent told Cochran he was attending Alcoholics Anonymous once a week, although he has failed to bring proof of these meetings as Cochran requested.

5. Respondent is teaching in the paralegal program at Johnson County Community College.

6. Respondent stated he was "thinning out his nonproductive clients and was not taking on anyone unless it appeared that person could be helped and [respondent] would be paid for services rendered."

7. Respondent stated he was being prompt in returning daily phone calls and in court appearances.

8. Judge Ruddick and Judge Tatum gave favorable reports to Cochran regarding respondent, stating he is making timely court appearances and generally representing his clients in a professional manner.

Included in the material submitted to the court is a letter dated December 16, 1997, from a physician at Family Care in Overland Park indicating that respondent is taking medication for improved concentration and an intensive outpatient aftercare plan dated November 4, 1996.

The panel found by clear and convincing evidence that respondent's conduct violated MRPC 1.3 when he failed to file the bank-

ruptcy petition on Mader's behalf in a timely fashion. The panel also found that respondent's communication with Mader violated MRPC 1.4 because he repeatedly lied to his client.

At the hearing, the Disciplinary Administrator had requested that the hearing panel recommend that respondent be disciplined pursuant to Rule 211(f) (1997 Kan. Ct. R. Annot. 224) and suspended from the practice of law for an indefinite period. He further recommended that the indefinite suspension be held in abeyance so that (1) respondent could be evaluated by a psychologist regarding his psychological situation and any chemical dependency, with the understanding that respondent follow said psychologist's recommendations, (2) a supervising attorney be appointed for respondent, and (3) respondent make restitution to complainant Mader for his wages garnished during the time the bankruptcy petition was said to have been filed but was not, plus the sum equal to Mader's attorney fees and court costs.

In an October 24, 1996, letter to the panel, the Disciplinary Administrator modified his recommendation to include probation, with attorney Cochran supervising respondent's law practice and an attorney from the Impaired Lawyer's Committee supervising respondent's compliance with treatment, and $850 restitution.

In its final hearing report, in making its recommendations for discipline, the panel reviewed the ABA Standards for Imposing Lawyer Sanctions and considered factors including the following: (1) whether the lawyer has violated a duty owed to a client, to the public, to the legal system, or to the profession; (2) whether the lawyer acted intentionally, knowingly, or negligently; (3) the amount of the actual or potential injury caused by the lawyer's misconduct; and (4) the existence of aggravating or mitigating factors.

The panel determined the evidence showed that respondent violated a duty to his client and to the legal profession by not doing what his client hired him to do, i.e., file a bankruptcy petition, and then by lying to his client and to other attorneys in telling them that he had filed it.

The panel found the following aggravating factors:

a. Prior disciplinary offenses. Respondent was censured July 14, 1995, for violating MRPC 1.1 (1997 Kan. Ct. R. Annot. 268) (competence), 1.3 (diligence), and 1.4 (communication). *In re Morse*, 258 Kan. 248, 899 P.2d 467 (1995). In addition, he was informally admonished on July 19, 1991, for violating MRPC 1.4 and 1.16 (1997 Kan. Ct. R. Annot. 324) (declining or terminating representation); he was informally admonished on February 18, 1988, for unspecified violations; and on July 18, 1986, he was informally admonished for violating MRPC 1.1 and 1.3.

b. Dishonest or selfish motive. Respondent lied to delay discovery of his violations.

c. Pattern of misconduct and

d. Multiple offenses. Respondent's misconduct follows a pattern as evidenced by the lies he told over several months' time regarding Mader's bankruptcy petition, as well as by his earlier disciplinary transgressions of a similar nature.

e. Vulnerability of the victim. The panel found Mader particularly vulnerable after respondent assured him of protection from his creditors.

f. Substantial experience in the practice of law. Respondent has sufficient experience in the practice of law to be observant of the rules of ethics.

The panel found the following mitigating factors:

a. Personal or emotional problems if such misfortunes have contributed to violations of the Model Rules of Professional Conduct. Respondent has been diagnosed as suffering from depression and alcohol dependence.

b. Timely good faith effort to make restitution or to rectify consequences of misconduct. Respondent has agreed to make restitution as determined appropriate by the panel.

c. The present and past attitude of the attorney as shown by his cooperation during the hearing and his full and free acknowledgement of the transgressions. Respondent has been cooperative in addressing his need for treatment. Yet, there is no evidence whether respondent is experiencing a meaningful and sustained period of recovery from alcoholism and depression. Thus, no evi-

dence supports the conclusion that respondent's behaviors that caused the disciplinary violations herein have been arrested.

d. Previous good character and reputation. Judge Thomas H. Bornholdt wrote to the Disciplinary Administrator's office regarding respondent's ability to practice.

e. Mental disability or chemical dependency including alcoholism or drug abuse when (1) there is medical evidence that the respondent is affected by a chemical dependency or mental disability; (2) the chemical dependence or mental disability caused the misconduct; (3) the respondent's recovery from the chemical dependency or mental disability is demonstrated by a meaningful and sustained period of successful rehabilitation; and (4) the recovery arrested the misconduct and recurrence of that misconduct is unlikely. Respondent accepted ongoing treatment from Dr. Ray of Heartland Behavioral Health Consultants, P.C. However, the record is void of evidence regarding respondent's recovery.

Based upon the record and aggravating and mitigating factors, the panel recommended respondent be indefinitely suspended.

The court, having considered the record, the report of the hearing panel, and arguments of counsel, concludes that the findings of fact are supported by clear and convincing evidence. Respondent takes no exception to the findings of fact. We also conclude that the panel's conclusions of law are supported by the findings and adopt the findings and conclusions of the panel. We, unlike the panel, adopt the recommendation of the Disciplinary Administrator's office.

IT IS THEREFORE ORDERED that imposition of discipline against respondent Robert L. Morse be suspended and that he be placed on supervised probation for a period of 2 years from the date of this order.

IT IS FURTHER ORDERED:

(1) Attorney John Cochran, of Olathe, will supervise respondent's probation and supervise his practice for a period of 2 years from the date of this order.

(2) Cochran shall be acting as an officer of the court and as an agent of the court as supervisor of probation in monitoring the legal practice of respondent.

(3) Cochran shall be afforded all immunities granted by Supreme Court Rule 223 (1997 Kan. Ct. R. Annot. 252) during the course of his activities as directed by this order. Respondent will allow Cochran access to his files, his employees, his trust account, and his doctors. Cochran shall act periodically at such intervals as he deems appropriate, or as directed by the Disciplinary Administrator, and monitor the following: (a) the status of each case on respondent's case list; (b) respondent's docketing system; (c) respondent's management of discovery; (d) respondent's responses to clients' requests for information; (e) respondent's trust account; and (f) the views of the local judges as to their evaluation of respondent's performance.

(4) Cochran will report to the Disciplinary Administrator at such times as requested by the Disciplinary Administrator as to respondent's progress and any problems observed. Any material deviation from proper practice or respondent's use of alcohol shall be immediately reported to the Disciplinary Administrator.

(5) Respondent shall continue treatment for his depression and substance abuse. He shall continue to regularly attend AA meetings. During the probation period, respondent's substance abuse and clinical depression care and treatment is to be monitored by Dr. Ray of Heartland Behavioral Consultants, P.C. Dr. Ray shall keep the Disciplinary Administrator informed of respondent's progress in such a manner as the Disciplinary Administrator shall request.

(6) Respondent shall also furnish all reports as requested by the Disciplinary Administrator.

IT IS FURTHER ORDERED that, in the event respondent fails to abide by the conditions set out herein, a show cause order shall issue to respondent, and this court shall take whatever disciplinary actions it deems just and proper, without further formal proceedings.

IT IS FURTHER ORDERED that this order be published in the official Kansas Reports and that the costs of the proceeding be assessed to respondent.